FILED
2023 Jun-08 PM 05:13
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **THOMAS BENSON, as Administrator of the Estate of BRIAN BENSON, deceased,** | ) | |
| **Plaintiff,** | ) | **CIVIL ACTION NO.:** |
| **vs.** | ) | **REMOVED FROM CIRCUIT COURT OF JEFFERSON COUNTY, CIVIL ACTION NO.: 01-CV-2023-900696** |
| **ALABAMA POWER COMPANY and FICTITIOUS PARTY DEFENDANTS A-J,** | ) | |
| **Defendant.** | ) | |

## ALABAMA POWER COMPANY'S NOTICE OF REMOVAL

Pursuant to 28 U.S.C. § 1446, Defendant Alabama Power Company ("Alabama Power") hereby removes the above-captioned action from the Circuit Court of Jefferson County, Alabama to the United States District Court for the Northern District of Alabama, Southern Division. In support of its Notice of Removal, Alabama Power states as follows:

## PROCEDURAL AND FACTUAL BACKGROUND

1. On February 28, 2023, Plaintiff Thomas Benson, as the Administrator of the Estate of the deceased, Brian Benson, commenced this civil action against Alabama Power in the Circuit Court of Jefferson County, Alabama, Action Number CV-2023-900696. A copy of the Complaint is attached hereto as **Exhibit A**.

2. In accordance with 28 U.S.C. § 1446(a), a copy of all process, pleadings, and orders served upon Alabama Power in the state court action to date are attached as **Exhibit B**.

3. Plaintiff served Alabama Power by process server on May 10, 2023.

4. This Notice of Removal is timely under 28 U.S.C. § 1446 because it is being filed within 30 days from the date Alabama Power was served with a copy of Plaintiff's initial pleading. *See* 28 U.S.C. § 1446.

5. As required under 28 U.S.C. § 1446(d), Alabama Power will promptly serve a copy of this Notice of Removal upon counsel for Plaintiff and file a copy with the Clerk of the Jefferson County Circuit Court.

6. Through this action, Plaintiff seeks to recover as beneficiary for the death of Brian Benson, who died on February 27, 2021 while fishing in the tailrace area below the R.L. Harris Dam (the "Harris Dam"). *See* Compl., at ¶ 8.

7. Alabama Power owns, operates, and maintains the Harris Dam—an electricity generation facility—pursuant to a Federal Energy Regulatory Commission ("FERC") License. *See* Affidavit of Alan Peeples, attached as **Exhibit C**, at ¶ 4.

8. Alabama Power filed an application for a federal license for the Crooked Creek Project (Federal Power Commission[1] Project No. 2628), which is now known as the Harris Dam, on November 5, 1968 (the "Project"). *See* Ex. 1 to Peeples Aff., at 1. The Harris Dam is located on the Tallapoosa River near Wedowee, Alabama. *Id.*

9. On December 27, 1973, FERC entered an order granting a license (the "FERC License") to Alabama Power for the construction of the Harris Dam (the "Order"). *Id.* As the Order explains, the Project was required to be licensed under the Federal Power Act ("FPA"), 16 U.S.C. § 825p. *Id.* at 11. Specifically, the Order states:

> This license is hereby issued to the Alabama Power Company (Licensee) of Birmingham, Alabama, under Section 4(e) of the Federal Power Act (Act) for a period of 50 years . . . for the construction, operation, and maintenance of the Crooked Creek Project No. 2628 . . . and which occupies approximately 58 acres of the lands of the United States, and further would be constructed and operated upon a navigable waterway of the United States, subject to the terms and conditions of the [Federal Power] Act, which is incorporated herein by reference as a part of this license and subject to such rules and regulations as the Commission has issued or prescribed under the provisions of this Act.

10. Plaintiff alleges that Alabama Power was negligent in:

a. failing to meet the governing standards specified by FERC with regard to safety (*see* Compl., at ¶ 10(h));

---

[1] The Federal Energy Regulatory Commission ("FERC") replaced the Federal Power Commission in 1977. For consistency, we will refer to the agency solely as FERC throughout this Notice.

b. failing to implement, promulgate, employ, and enforce reasonable safety standards, above and beyond the minimum standards of FERC, for the safety of the public (*see* Compl., at ¶ 10(j));

c. failing to properly load, start or stop the Harris Dam turbines in safe and adequate intervals to prevent hazardous amounts of water from flowing downstream (*see* Compl., at ¶ 10(e), (f));

d. failing to adequately warn the public of the hazard of rising water, including with visual and audible warnings and an adequate period of time between audible warnings and the release of water, to allow safe evacuation of the river and surrounding area (*see* Compl., at ¶ 10(a), (b), (d));

e. failing to provide physical restraining devices to prevent the public, from being in the area below the Dam (*see* Compl., at ¶ 10(c));

f. failing to properly inspect, maintain, and repair the Harris Dam and the area below the Dam to prevent the dangerous flow of water downstream (*see* Compl., at ¶ 10(g));

g. failing to take reasonably adequate measures to ascertain whether members of the public were in locations where they would be endangered by the release of rising water, and if so, to warn them (*see* Compl., at ¶ 10(i)); and

h. failing to operate the Harris Dam in a reasonably safe manner (*see* Compl., at ¶ 10(k)).

11. As set forth more fully below, this Court has exclusive jurisdiction over the Plaintiff's claims by virtue of the Federal Power Act's ("FPA") jurisdictional grant contained in 16 U.S.C. § 825p because the Plaintiff claims Alabama Power failed to meet FERC's safety standards in its operation of Harris Dam. *See* Compl., at ¶ 10(h). Additionally, this Court has original jurisdiction under 28 U.S.C. § 1331,

as Plaintiff's right to relief necessarily depends on the resolution of a disputed and substantial question of federal law.

12. All of the prerequisites for removal of this action to federal court on the basis of federal question jurisdiction have been satisfied. Federal subject matter jurisdiction exists and is conferred on this Court pursuant to 28 U.S.C. §§ 1331 and 16 U.S.C. § 825p. Supplemental jurisdiction over remaining state law claims is conferred on this Court pursuant to 28 U.S.C. § 1367.

## ARGUMENT AND AUTHORITY

### I. The Federal Power Act Confers Exclusive Federal Jurisdiction

13. Title 16 U.S.C. § 825p supplies United States District Courts with original and *exclusive* jurisdiction over matters by aggrieved parties who seek to impose liability relating to FERC licensing. *See* 16 U.S.C. § 825p ("The District Courts of the United States … shall have exclusive jurisdiction of violations of this chapter or the rules, regulations, and orders thereunder, and of all suits in equity and actions at law brought to enforce any liability or duty created by, or to enjoin any violation of, this chapter or any rule, regulation, or order thereunder. …").

14. The proper inquiry for purposes of federal jurisdiction is whether Plaintiff's claims "necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any

congressionally approved balance of federal and state judicial responsibilities." *Grable & Sons Metal Prod., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005).

15. Here, it cannot be credibly disputed that the right to relief is necessarily dependent on a disputed and substantial question of federal law under the FPA; that is, whether Alabama Power's conduct conformed with the FERC License, which governs safety standards that Plaintiff claims Alabama Power violated. *See Sherr v. S.C. Elec. & Gas Co.*, 180 F. Supp. 3d 407, 417 (D.S.C. 2016) (holding that plaintiff's claim that utility failed to properly operate dam and caused harm to downstream homeowners through floods raised a federal issue because the source of the duty of care for plaintiff's negligence claim for the utility's maintenance and operation of the dam stemmed from its status as a licensed FERC project, thereby subjecting the utility to the regulations of the FPA and FERC). These claims are federal in nature and cannot be resolved without reference to, reliance on, and interpretation of the FERC License.

16. Similarly, removal is warranted because the Plaintiff's claims implicate significant federal issues. There is a national interest in providing a federal forum for litigation that involves questions of electric generation and navigable waterways, both of which have a profound impact on interstate commerce. *See id.* at 418 (concluding that Court had original jurisdiction under 28 U.S.C. § 1331 and exclusive jurisdiction under 16 U.S.C. § 825p in part because issues of dam

maintenance, operation, warning, and safety were significant to the federal system as a whole as opposed to only being significant to the particular parties in the immediate suit).

17. The Order granting the license to Alabama Power specifically required the Company to provide public access to the tailrace area, where Brian Benson was fishing, for recreational use, and to provide warning devices to FERC's satisfaction:

> The Department and the Alabama Department of Conservation and Natural Resources, in letters to the Commission, recommended that sufficient land area be provided for fishing access to the tailwater area of the project. The Company advised by letter that it considers the tailwater area to be dangerous for this type of use. We recognize the potential danger in the vicinity of the tailwater but feel that with proper planning a safe facility can be provided and therefore we are requiring herein that the Company provide for fishing within the tail-water area, but under certain conditions and with adequate warning devices for fishermen.

> ....

> Article 43. The Licensee shall, to the satisfaction of the Regional Engineer, install and operate such signs, lights, sirens or other devices below the powerhouse to warn the public of fluctuations in flow from the project, and shall install such signs, lights and other safety devices in the project reservoir, such as log booms above the spillway and powerhouse intakes, as may be reasonably needed to protect the public in its recreational use of project lands and waters.

*See* Ex. 1 to Peeples Aff., at 8, 26–27.

18. More generally, the Order required Alabama Power to "comply with such rules and regulations of general or special applicability as the Commission may from time to time prescribe for the protection of life, health, or property." *Id.* at 15. Further, "the operations of the Licensee … shall at all times be controlled by such

reasonable rules and regulations … as the Commission may prescribe for the protection of life, health, and property ….” *Id.* at 18.

19. In addition to this retained regulatory authority in the Order relating to public safety at Harris Dam, federal law also requires that a “licensee [*e.g.*, Alabama Power] must install, operate, and maintain any signs, lights, sirens, barriers, or other safety devices that may reasonably be necessary or desirable to warn the public of fluctuations in flow from the project or otherwise to protect the public in the use of project lands and waters.” 18 C.F.R. § 12.52(a). Further, FERC “may require the . . . licensee [Alabama Power] to prepare, periodically update, and file with [FERC] a public safety plan that formalizes the installation, operation, and maintenance of all necessary public safety devices.” *Id.* at § 12.52(b). In accord, Alabama Power filed a Harris Dam public safety plan with FERC on November 1, 2012. This public safety plan, which is dated October 31, 2012, includes, among other information, an iconographic vicinity map detailing the locations of the various warning signs and audible alarm siren:




*See* Ex. 2 to Peeples Aff.—Oct. 31, 2012 Public Safety Plan for R. L. Harris Project. This October 31, 2012 public safety plan was the plan in effect at Harris Dam on February 27, 2021.

20. Further still, federal law also requires Alabama Power, as a FERC licensee, to submit an initial "report to the [FERC] Regional Engineer [of] any drowning or other incident resulting in death, serious injury, or rescue that occurs at the project works or involves project operation[, and where such] initial report must be made promptly after the incident is discovered, may be provided via email or telephone, and must include a description of the cause and location of the incident."

18 C.F.R. § 12.10(b)(1). Thereafter, licensees are required to "submit to the [FERC] Regional Engineer a written report." *Id.* at § 12.10(b)(2).

21. Regarding the matter at hand, Alabama Power submitted its initial report of Mr. Benson's drowning to FERC via telephone on March 1, 2021. *See* Ex. 3 to Peeples Aff.—March 12, 2021 Letter from Richard L. Mickwee to Wayne B. King. Eleven days later, Alabama Power complied with the provisions of 18 C.F.R. § 12.10(b)(2) by submitting its follow-up, written report to FERC. *Id.* On July 1, 2021, FERC sent a responsive letter to Alabama Power denoting that, due to "its proximity to the dam, . . . [FERC] consider[ed] this incident [of Mr. Benson's drowning] to be project related as defined by 18 CFR § 12.10(b)(4)" and directed Alabama Power to "submit a description of any remedial actions" that Alabama Power proposed to undertake at Harris Dam as a result. *See* Ex. 4 to Peeples Aff.—July 1, 2021 Letter from Wayne B. King to Richard L. Mickwee. Alabama Power filed its reply to FERC's directive on July 30, 2021, therein explaining its reasoned and supported belief as to the appropriateness and adequacy of the existing public safety measures at Harris Dam:

> APC believes that the existing measures in place within the Harris Dam tailrace vicinity appropriately—and more than adequately—apprise the recreating public of the subject area's potentially dangerous conditions. In any event, the dangerous conditions in the tailrace downstream of Harris Dam are open, obvious, and entirely avoidable. APC has constructed a designated public access area—complete with restroom facilities, a paved parking lot, and a public fishing pier—along the west downstream bank area (*i.e.*, the bank opposite of where Mr. Benson was fishing). APC also has installed a number of strategically positioned signs along both downstream banks warning visitors of the hazardous conditions at and below the dam and the dangers associated with accessing the tailrace waters.

*See* Ex. 5 to Peeples Aff.—July 30, 2021 Letter from Richard L. Mickwee to Wayne B. King. And on December 1, 2021, after a review of Alabama Power's filed submissions, FERC replied that it "agree[d] with [Alabama Power's] determination that no additional public safety measures [at Harris Dam] are warranted at this time to avoid or reduce the chance of similar occurrence in the future." *See* Ex. 6 to Peeples Aff.—December 1, 2021 Letter from Wayne B. King to Richard L. Mickwee.

22. As explained in full above, because a determination of this action necessarily involves the interpretation of regulations and rules imposed by FERC under the FPA, removal is appropriate pursuant to 16 U.S.C. § 825p.

## II. Federal Question Jurisdiction Exists Under 28 U.S.C. § 1331

23. Although a federal question must typically be raised in the Complaint, "[t]here is, however, another longstanding, if less frequently encountered, variety of federal 'arising under' jurisdiction, [the Supreme] Court [has] recognized for nearly 100 years that in certain cases federal-question jurisdiction will lie over state-law claims that implicate significant federal issues." *Grable*, 545 U.S. at 312. "[F]ederal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn v. Minton*, 568 U.S. 251, 251 (2013).

24. A Plaintiff's characterization of the Complaint as comprising of exclusively state law claims is not determinative of whether federal-question jurisdiction exists. "In order to determine whether the Plaintiff's negligence claim involves a substantial federal question, the court must look to each element of the cause of action and determine whether a ruling on the claim requires interpretation of an issue of importance to the federal system." *Sherr*, 180 F. Supp. 3d at 417 (citing *Grable*, 545 U.S. at 311).

25. Here, the Court cannot analyze Plaintiff's negligence claims without interpreting FERC's regulations and the FPA. "Applying state tort law to set the duty of care for the operation of FERC-licensed projects would 'stand as an obstacle to the accomplishment and execution of the full purposes and objectives' of the FPA." *Simmons v. Sabine River Auth. Louisiana*, 732 F.3d 469, 477 (5th Cir. 2013) (quoting *Arizona v. United States*, 567 U.S. 387, 399 (2012)). In *Otwell v. Alabama Power Co.*, the Eleventh Circuit held that state law tort claims related to the operation and maintenance of a FERC-regulated dam are "inescapably intertwined" with a review of a FERC license. 747 F.3d 1275, 1279 (11th Cir. 2014) (holding plaintiff's state law claims were an "impermissible collateral attack" on FERC's licensing decision); *see also Carrington v. City of Tacoma, Dep't of Pub. Utilities, Light Div.*, 276 F. Supp. 3d 1035, 1041-42 (W.D. Wash. 2017) (denying Plaintiffs' Motion to Remand [b]ecause Plaintiffs' state law negligence claim necessarily raises

a substantial federal question regarding the duty of care established by [the utility]'s FERC license").

26. The matters at issue are regulated by FERC under the FPA, and the claims at issue in this case cannot be decided without reference to the FERC License and federal regulations promulgated by FERC in its exercise of federal jurisdiction in the subject area. Consequently, Plaintiff's right to relief necessarily depends on the resolution of a disputed and substantial question of federal law.

27. Even if Plaintiff had not included in his Complaint specific allegations regarding Alabama Power's FERC imposed duties in relation to the operation of the Harris Dam, such omission would still not be determinative. *See Sherr*, 180 F. Supp. 3d at 417 (finding federal issues were necessarily raised in the claim where an assessment of the merits of Plaintiffs' claim for negligence regarding the operation of the Lake Murray Dam required consideration of the regulations provided by the FPA and FERC; and stating "Plaintiff attempt to avoid reference to federal law through artful pleading is not compelling since the FERC 'sets the appropriate duty of care for dam operators.'").

28. Based on the foregoing, the Court has original jurisdiction under 28 U.S.C. § 1331 over the present action. Under 28 U.S.C. § 1441(a), a defendant may remove a state court action to the U.S. District Court for the district and division embracing the venue where the action is pending. *See* 28 U.S.C. § 1441(a).

Accordingly, this action is removable to the United States District Court for the Northern District of Alabama, Southern Division, under 28 U.S.C. § 1441(a).

**WHEREFORE**, premises considered, Alabama Power respectfully requests that the above-described action now pending in the Circuit Court of Jefferson County, Alabama, be removed to this Court.

DATED: June 8, 2023

/s/ *Allen M. Estes*
One of the Attorneys for
Defendant Alabama Power Company

**<u>OF COUNSEL</u>**

James A. Byram, Jr.
Allen M. Estes
Sloane B. Phillips
BALCH & BINGHAM LLP
Post Office Box 306
Birmingham, AL 35201-03062
Telephone: (205) 251-8100
Facsimile: (205) 226-8799
Email: jbyram@balch.com
aestes@balch.com
sphillips@balch.com

**CERTIFICATE OF SERVICE**

I hereby certify that on June 8, 2023, a true and correct copy of the foregoing has been furnished either through the Court's electronic filing system or by electronic mail, upon the following parties and other relevant individuals:

Jessica Bugge
Law Firm of Jessica Bugge, LLC
1442 Montgomery Highway, Suite 100
Birmingham, Alabama 35216
Telephone: (205) 677-6878
Facsimile: (205) 336-7646

*s/ Allen M. Estes*
Of Counsel